UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: PETTINGILL ENTERPRISES, INC.,
A New Mexico corporation,

and

DAVID PETTINGILL and
PAMELA PETTINGILL,

Debtors.                                                Jointly administered under
                                                        Case No. 11-12-10515 JA

PETTINGILL ENTERPRISES, INC.,
A New Mexico corporation,

   Plaintiff,

v.                                                      Adversary No. 12-1217 J

BLACKSTONE EQUIPMENT FINANCING, L.P.,
A California Limited Partnership,

   Defendant.

### ORDER DENYING BLACKSTONE EQUIPMENT FINANCING, L.P.'S MOTION TO DISMISS

THIS MATTER is before the Court on Blackstone Equipment Financing, L.P.'s Motion to Dismiss ("Motion to Dismiss") filed by Blackstone Equipment Leasing, L.P. f/k/a Blackstone Equipment Financing, L.P. ("Blackstone"), by and through its attorneys of record, Butt Thornton & Baehr PC (Rodney L. Schlagel). *See* Docket No. 10. Plaintiff Pettingill Enterprises, Inc. ("PEI"), opposes the motion. *See* Plaintiff's Response to Blackstone Equipment Financing's Motion to Dismiss ("Response"), Docket No. 14. Blackstone also filed a reply. *See* Blackstone Equipment Financing, L.P.'s Reply in Support of its Motion to Dismiss ("Reply"), Docket No. 15. Blackstone asserts that a determination by Judge Starzynski in the PEI bankruptcy case that

the transaction between Blackstone and PEI constituted a "true lease" and not a financing arrangement forecloses PEI from asserting a fraudulent transfer claim against Blackstone in this adversary proceeding relating to the same transaction. Blackstone requests the Court to dismiss PEI's complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, arguing that res judicata and collateral estoppel bar PEI's claims. After consideration of the Motion to Dismiss, the Response, and the Reply, and being otherwise sufficiently informed, the Court finds that neither res judicata nor collateral estoppel apply to PEI's claims raised in this adversary proceeding. The Court, will, therefore, deny the Motion to Dismiss.

## DISCUSSION

The purpose of Fed.R.Civ.P. 12(b)(6), made applicable to adversary proceedings by Fed.R.Bankr.P. 7012, is to test the sufficiency of the complaint. *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994)(stating that Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.")(citation omitted). In evaluating a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint, disregarding any legal conclusions, and evaluates the factual allegations in the light most favorable to the plaintiff. *Moore v. Guthrie,* 438 F.3d 1036, 1039 (10th Cir. 2006)(stating that under Rule 12(b)(6), "'all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party.'")(quoting *Sutton v. Utah State Sch. For the Deaf and Blind,* 173 F.3d 112, 1236 (10th Cir. 1999)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(explaining that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

2

Res judicata may be raised through a motion to dismiss; however, the facts necessary to support the defense must be apparent from the face of the pleadings. *See Miller v. Shell Oil Co.,* 345 F.2d 891, 893 (10th Cir. 1965)(reversing court's decision to grant a motion to dismiss based on defense of res judicata, where the facts that would support the defense were not contained in the complaint). *See also, Andrews v. Daw,* 201 F.3d 521, 524 n.1 (4th Cir. 2000)(acknowledging that the affirmative defense of res judicata may be raised through a motion to dismiss under Rule 12(b)(6), but "'only if it clearly appears on the face of the complaint.'")(quoting *Richmond, Fredericksburg & Potomac R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993)).[1] If evidentiary material outside the complaint is considered, the Court must treat the motion as a motion for summary judgment under Fed.R.Civ.P. 56. *See* Rule 12(d), Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7012, Fed.R.Bankr.P.; *Miller v. Shell Oil,* 345 F.2d at 893 (stating that, while a defendant may raise an affirmative defense through a motion to dismiss, the court must treat the motion as a motion for summary judgment under Rule 56, Fed.R.Civ.P. if the affirmative defense is based upon matters outside of the complaint). Alternatively, the party asserting res judicata or collateral estoppel through a motion to dismiss may request the Court to take judicial notice of additional documents filed of record in the prior case. *Cf. Andrews v. Daw,* 201 F.3d at 524 n.1 (stating that "when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.")(citations omitted).

---

[1]*But cf. Test Masters Educ. Serv., Inc. v. Singh,* 428 F.3d 559, 570, n.2 (5th Cir. 2005)(stating that, "generally a res judicata contention cannot be brought in a motion to dismiss" but acknowledging that, where the trial court treats a motion to dismiss as a motion for summary judgment, dismissal under 12(b)(6) premised on res judicata is not reversible error)(citation sand internal quotations omitted).

3

The Complaint includes the following factual allegations:

    a. PEI filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 14, 2012. *See* Complaint to Recover Fraudulent Transfers ("Complaint"), ¶ 3 – Docket No. 1.

    b. On May 31, 2011, and within two years prior to the filing of the [bankruptcy] petition, PEI sought to borrow funds from Blackstone, and Blackstone agreed to provide funds to PEI, but on terms designed by Blackstone. Complaint, ¶ 5.

    c. In order to provide funding to PEI, Blackstone arranged an 'equipment lease' which required PEI to first assign to Blackstone, as a 'sale' specific equipment then owned by BEI, which equipment is listed on the Blackstone 'lease,' (the 'listed equipment'), and then for PEI to 'lease' such listed equipment back from Blackstone. PEI has, in the underlying chapter eleven proceeding, asserted that the 'lease' referred to with Blackstone is actually a financing arrangement whereby Blackstone loaned the Debtor funds, and took a security interest in certain of PEI's assets, but Blackstone asserts that such arrangement is a 'true lease,' and the Court has not determined that the arrangement is a true lease. Complaint, ¶ 6.

The Motion to Dismiss includes the following additional facts:

    a. On March 26, 2012, Blackstone filed a Motion for Relief from the Automatic Stay as to Leased Equipment, or in the Alternative, for Adequate Protection pursuant to 11 U.S.C. § 365(D)(1). Motion to Dismiss, ¶ 2.

    b. After hearing oral arguments and testimony from all parties, in an oral ruling on June 20, 2012, Judge Starzynski ordered that the Plaintiff commence making monthly adequate protection payments to Defendant in the amount of $23,559.55, plus tax, for a total of $25,380.58, with the first payment being due on July 2, 2012, and all subsequent payments being due on the first of the month. Motion to Dismiss, ¶ 3.

    c. At no time in Plaintiff's Response to the Motion for Adequate Protection, or during oral arguments did Plaintiff argue that the transaction between Blackstone and Plaintiff was a fraudulent transfer. Motion to Dismiss, ¶ 4.

    d. Plaintiff filed its Complaint to Recover Fraudulent Transfers on June 21, 2012. Motion to Dismiss, ¶ 5.

PEI does not contest these additional facts raised by Blackstone in its Motion to Dismiss. *See* Response, ¶ 1.

4

Blackstone asserts that Judge Starzynski's prior determination as part of the stay litigation that the transaction at issue constitutes a true lease bars PEI under the doctrines of res judicata or collateral estoppel from asserting a claim to avoid the transaction as a fraudulent transfer pursuant to 11 U.S.C. § 548. "Res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Northern Natural Gas Co. v. Grounds,* 931 F.2d 678, 681 (10th Cir. 1991)(citing *Montana v. United States,* 440 U.S. 147, 153-154, 99 S.Ct. 970, 973-974, 59 L.Ed.2d 210 (1979)).

Under federal law[2], res judicata (also known as claim preclusion) requires satisfaction of the following elements: "(1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Hatch v. Boulder Town Council,* 471 F.3d 1142, 1149 (10th Cir. 2006)(quoting *Yapp v. Exel Corp.,* 186 F.3d 1222, 1226 (10th Cir. 1999)). In other words, "[a] claim is barred by res judicata when the prior action involved identical claims and the same parties or their privies." *Frandsen v. Westinghouse Corp.,* 46 F.3d 975, 978 (10th Cir. 1995)(citing *Satsky v. Paramount Communications, Inc.,* 7 F.3d 1464, 1467 (10th Cir. 1993)). Res judicata bars re-litigation of not only the issues that were actually decided in the prior litigation, but also issues that could have been raised in the prior litigation. *See Frandsen v. Westinghouse,* 46 F.3d at 978 ("Res judicata . . . precludes the parties or their privies from relitigating the issues that were decided or issues that could have been raised in the earlier action.")(citing *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)); *Pelt v. Utah,* 539 F.3d 1271, 1281 (10th Cir. 2008)(same). In other words, "[r]es judicata prevents litigation of all grounds for, or defenses

---

[2] Blackstone cites New Mexico state law for the required elements under res judicata and collateral estoppel. But because a federal bankruptcy court issued the order that Blackstone asserts has res judicata and collateral estoppel effect, federal law regarding res judicata and collateral estoppel applies.

5

to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed. 2d 767 (1979)(citation omitted).[3]

The factual allegations in the Complaint and the additional uncontested facts identified in Blackstone's Motion to Dismiss establish the following: 1) that the parties in this adversary proceeding are the same as the parties that participated in the litigation arising from Blackstone's Motion for Relief from the Automatic Stay as to Leased Equipment, or in the Alternative, for Adequate Protection Pursuant to 11 U.S.C. § 365(d)(1) (the "Stay Motion"); 2) that Judge Starzynski issued an order on the Stay Motion determining that the transaction constituted a true lease rather than a financing arrangement under which Blackstone should be treated as a secured creditor; and 3) that PEI did not assert its claim that the transaction at issue was a fraudulent transfer in defense of the Stay Motion. These factual allegations establish the first two elements required for purposes of res judicata, namely, an identity of parties and a judgment on the merits of the Stay Motion.[4] However, the claim at issue in the stay litigation and the fraudulent transfer claim are not identical causes of action; each action is governed by a different section of the Bankruptcy Code.[5] *Cf. In re Ginter,* 349 B.R. 193, 196 (8th Cir. BAP 2006)(pointing out that a

---

[3] *See also Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 327 n.5, 99 S.Ct. 645, 649, 58 L.2d.2d 552 (1979)(stating that res judicata bars relitigation in a second suit of the same cause of action by the same parties or their privies).

[4] *See Franklin Sav. Ass'n v. Office of Thrift Supervision,* 31 F.3d 1020, 1022 n.3 (10th Cir. 1994)("As a general rule, orders granting or denying relief from an automatic stay are appealable final orders.")(citation omitted). *But cf. Simon v. JP Morgan Chase Bank (In re Lebbos),* 455 B.R. 607, 612 (Bankr.E.D.Mich. 2011)(finding that the first element of res judicata was not satisfied with regard to avoidance and preference claims filed by the trustee under 11 U.S.C. § 544 and 11 U.S.C. § 547 following the entry of an order granting an uncontested motion for relief from stay, reasoning that the scope and effect of the order granting relief from stay "is determined and limited to the merits and grounds" raised by the creditor).

[5] A motion for relief from the automatic stay is governed by 11 U.S.C. § 362(d), which provides that the automatic stay may be terminated, annulled, modified, or conditioned for "cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). A claim to avoid a transfer as constructively fraudulent is governed by 11 U.S.C. § 548(a), which provides, in part, that a trustee (or debtor in possession with the powers of a trustee) may avoid a transfer of an interest in property, or obligation made or incurred by the debtor within two years of the petition date, if the debtor "received less than reasonably equivalent value in exchange for such transfer or

6

motion for relief from stay is governed by a different code section than a motion to avoid lien). Thus, in order for res judicata to apply, PEI's fraudulent transfer claim must be a claim that otherwise could have been raised in the context of the Stay Motion.

PEI points out that it could not have raised its fraudulent transfer claim as part of the Stay Motion litigation because a claim for fraudulent transfer can only be brought by adversary proceeding. *See* Fed.R.Bankr.P. 7001. Blackstone concedes that an action to avoid a transfer as constructively fraudulent under 11 U.S.C. § 548 must be brought by adversary proceeding, but contends that PEI should have raised its fraudulent transfer claim as a defense to Blackstone's Stay Motion. This Court disagrees.

Claim preclusion forces "'a *plaintiff* to explore all of the facts, develop all the theories, and demand all the remedies in the first suit'" that pertain to a particular transaction or series of related transactions forming the basis of a plaintiff's claims. *Stone v. Dep't of Aviation,* 453 F.3d 1271, 1279 (10th Cir. 2006)(quoting 18 Federal Practice and Procedure § 4408)(emphasis added by *Stone*). A defendant, however, generally need only assert compulsory counterclaims to avoid application of res judicata in a subsequent suit. *Id.* at 1280 (applying res judicata under state law, stating that "principles of claim preclusion only oblige a *defendant* to assert a compulsory counterclaim as required by state law.")(emphasis in original).

PEI's fraudulent transfer claim is not a counterclaim that could have been asserted as part of the Stay Motion litigation. Stay Motions are contested matters governed by Fed.R.Bankr.P. 9014. Rule 9014(c) specifies which additional rules apply to contested matters. Fed.R.Bankr.P. 9014(c). Rule 7013, which governs counterclaims, is not one of the rules made applicable to contested matters by Rule 9014. *See* Fed.R.Bankr.P. 9014(c); *Nat'l Westminster Bank, U.S.A. v.*

---

obligation" and was either insolvent as of the date of the transfer or obligation, became insolvent as a result of the transfer or obligation. 11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I).

*Ross,* 130 B.R. 656, 671 (S.D.N.Y. 1991)(noting that a motion for relief from stay is not an adversary proceeding to which Rule 7013 applies and concluding that res judicata did not bar the trustee's claims). Thus, PEI could not have raised its fraudulent transfer claim as a counterclaim in the contested matter and is not, therefore precluded by res judicata from asserting its claim in this adversary proceeding.

Other bankruptcy courts have similarly concluded that a debtor or case trustee is not precluded from asserting claim to avoid a fraudulent transfer or preferential transfer by virtue of failing to raise such claim in connection with a creditor's motion for relief from stay. *See, e.g., In re Goldberg,* 277 B.R. 251, 266 (Bankr.M.D.La. 2002)(stating that "[s]tay relief does not extinguish avoidance actions"); *Willis v. Borg-Warner Acceptance Corp. (In re Willis),* 48 B.R. 295, 303-304 (D.C. Tex. 1985)(rejecting the creditor's assertion that the debtors should have raised their fraudulent transfer claim as part of its action to lift the automatic stay); *Coleman v. Home Sav. Ass'n (In re Coleman),* 21 B.R. 832, 836 (Bankr.S.D.Tex. 1982)(concluding that "[a]n action to avoid a fraudulent transfer is simply not a proper issue in a § 362 complaint" and refusing to consider res judicata as a defense to the fraudulent transfer action). [6] *See also Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 32 (1st Cir. 1994)(collecting cases and observing that, given the summary nature of stay relief proceedings, a decision to grant stay relief does not involve the determination of counterclaims; thus, such counterclaims are not precluded from being asserted through a later proceeding).

In *Lebbos,* the bankruptcy court considered whether res judicata barred a subsequent suit by a trustee to avoid a creditor's lien under 11 U.S.C. § 547 and 11 U.S.C. § 544 following an order granting an uncontested motion for relief from the automatic stay. *Lebbos,* 455 B.R. at

---

[6] *See also Ginter,* 349 B.R. at 197 (stating that "[l]ien avoidance rights are not affirmative defenses to a motion for relief from the automatic stay" and concluding that res judicata did not apply to bar a subsequent suit to avoid the lien that was the subject of the prior order granting stay relief).

8

611. The *Lebbos* court acknowledged that, while it may be appropriate to raise a defense or counterclaim in response to a motion for relief from stay, "any such defenses or counterclaims raised during a § 362(d) hearing would and should still be pursued in the context of an adversary proceeding for a final decision on the merits." *Lebbos,* 455 B.R. at 614 (citing *In re Hurst,* 409 B.R. 79, 83 (Bankr.D.Md. 2009))(remaining citation omitted). This Court agrees that a final adjudication of the debtor's fraudulent transfer claims must be determined in an adversary proceeding. Res judicata thus does not bar PEI's claim.

Like res judicata, collateral estoppel bars re-litigation in a subsequent suit, but differs from res judicata in that the second suit involves a different cause of action. *Parklane Hosiery v. Shore,* 439 U.S. at 317 n.5. Collateral estoppel (also known as issue preclusion) precludes parties from re-litigating issues that have already been determined in a prior valid, and final judgment. *See Dodge v. Cotter Corp.,* 203 F.3d 1190, 1198 (10th Cir. 2000)("'When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'")(quoting *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)). The required elements for collateral estoppel under federal law are:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.
>
> *Dodge v. Cotter,* 203 F.3d at 1198 (citing *Murdock v. Ute Indian Tribe of Uintah and Ouray Reservation,* 975 F.2d 683, 687 (10th Cir. 1992)

Here, the prior decision was issued as a result of the Stay Motion and determined that the transaction at issue constituted a true lease. Blackstone argues that PEI's fraudulent transfer

9

claim is an attempt to re-litigate the same issue because the fraudulent transfer claim contests the validity of the lease.  Blackstone characterizes the prior litigation as a challenge to the ownership of the equipment that was the subject of the transaction, and asserts that the Court's prior determination that Blackstone is the owner of the leased equipment is the same issue to be decided as part of PEI's fraudulent transfer claim.   This Court disagrees.

PEI's fraudulent transfer claim under 11 U.S.C. § 548 alleges 1) that PEI received less than reasonably equivalent value from Blackstone in exchange for what PEI provided to Blackstone as part of the subject transaction; and 2) that PEI was insolvent or became insolvent as a result of the transfers, was engaged or about to engage in transactions that would leave PEI with unreasonably small capital, or believed it would incur debts that would be beyond PEI's ability to pay as those debts matured.  *See* Complaint, ¶¶ 11 and 12.  There is presently no indication that the Court's prior determination that the transaction constituted a "true lease" fully adjudicated the issue of reasonably equivalent value; nor did the prior determination adjudicate whether PEI satisfied one of the three alternative additional requirements under 11 U.S.C. § 548(a)(1)(B)(ii).  Blackstone asserts that PEI's fraudulent transfer claim again challenges the validity of the lease.   But a true lease can form the basis of a claim for fraudulent transfer.[7]  Therefore, if PEI were to prevail on its fraudulent transfer claim, that result would be consistent with the determination that the transaction in question is a true lease.  Thus, even though PEI's fraudulent transfer claim arises from the same transaction that was the subject of the Stay Motion, the issue previously decided is not identical to the issues now raised in this adversary

---

[7]*See, e.g., In re Keeley and Grabanski Land P'ship,* 2012 WL 764442 (Bankr. N.D. Mar. 7, 2012)(avoidance of a lease as a fraudulent transfer under § 548);  *Lowe v. B.R.B. Enterprises, Ltd. (In re Calvillo),* 263 B.R. 214 (W.D.Tex. 2000)(suit filed by Chapter 7 trustee to avoid sale and leaseback arrangement as constructively fraudulent);  *Kapila v. Clark (In re Trafford Distributing Center, Inc.),* 431 B.R. 263, 298 (Bankr.S.D.Fla. 2010)(transfers of additional rent were constructively fraudulent); *Nickless v. Pappas (In re Prime Mortgage Fin., Inc.),* 2011 WL 4572006 (1st Cir. BAP Feb. 14, 2011)(lease payments made by debtor corporation on behalf of its principal were constructively fraudulent where debtor-corporation did not receive reasonably equivalent value in exchange for the payments).

proceeding. Nor did PEI have a full and fair opportunity to litigate its fraudulent transfer claim as part of the contested Stay Motion litigation. Consequently, the elements necessary to the application of collateral estoppel to bar PEI's fraudulent transfer claim have not been satisfied.

WHEREFORE, IT IS HEREBY ORDERED, that the Motion to Dismiss is DENIED.

/s/ Robert H. Jacobvitz

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: November 2, 2012

COPY TO:

Michael Romeo Demarco
The Law Offices of Michael R. Demarco, E
Attorney for Plaintiff
Box 390
McIntosh, NM 87032

Matthew A. Jones
Rodney L. Schlagel
Sherrill K. Filter
Attorneys for Defendant
PO Box 3170
Albuquerque, NM 87190